IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIREEN DEEN<br>136 Franklin Street. Apt. 2<br>Brooklyn, NY 11222 | : CLASS ACTION COMPLAINT<br>:<br>: CIVIL ACTION NO. _____ |
| and | :<br>: JURY TRIAL DEMANDED |
| AURIN SQUIRE<br>2901 NW 206th Street<br>Miami, FL 33056 |  |
| and | : |
| LATOYA NASH<br>915 Horizon Hills Drive<br>Dallas, TX 75253 |  |
| and | : |
| TERINA WESTMEYER<br>123 Clohan Ave.<br>Martinsburg, WV 25401 | : |
| and |  |
| MEGAN KILIAN<br>122 Norfolk Street, Apt. 7<br>New York, New York 10002 | : |
| Plaintiffs<br>v. | : |
| NEW SCHOOL UNIVERSITY<br>66 West 12th Street,<br>New York, NY 10011<br>Defendant | : |

RECEIVED
AUG 1 2 2005
U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT – JURY TRIAL REQUESTED**

1.    This is a class action brought by Plaintiffs Shireen Deen, Aurin Squire. LaToya Nash, Terina Westmeyer, and Megan Kilian (collectively, "Plaintiffs"), on behalf of themselves and other similarly situated individuals against New School University.  Plaintiffs seek declaratory, injunctive and other equitable relief, and compensatory and punitive damages, based on Defendant's conduct, as described below.

### JURISDICTION

2.    The jurisdiction of this Court is invoked pursuant to the Class Action Fairness Act, codified at 28 U.S.C. §1332(d).  The Class Action Fairness Act provides jurisdiction over this action because more than one member of the class is a  citizen of another state, the Defendant is a citizen of New York and the  damages suffered by members of the class exceed $5 million.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant is located and/or has offices in this jurisdiction and a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction.

### PARTIES

4.    Plaintiff, Shireen Deen, is a third year student who enrolled in the Actors Studio Drama School of New School University in 2003.  Deen is a permanent resident of the State of New York.

5.    Plaintiff, Aurin Squire. is a 2005 graduate of the Actors Studio Drama School of New School University.  Squire is a permanent resident of the State of Florida.

6.    Plaintiff, LaToya Nash, is a third year student who enrolled in the Actors Studio Drama School of New School University in 2003.  Nash is a permanent resident of the State of

Texas.

      7.     Plaintiff, Terina Westmeyer, is a former student who enrolled in the Actors Studio Drama School of New School University during the 2004 - 2005 school year. Westmeyer is a permanent resident of the State of West Virginia.

      7.     Plaintiff, Megan Kilian, is a second year student who enrolled in the Actors Studio Drama School of New School University in 2004. Kilian is a permanent resident of the State of New York.

      8.     Defendant, New School University is accredited by the State of New York, with an address of 66 West 12th Street, New York, NY 10011. It consists of seven divisions: (a) The New School; (b) Graduate Faculty of Political and Social Science; (c) Parsons School of Design; (d) Robert J. Milano Graduate School of Management and Urban Policy; (e) Eugene Lang College; (f) Mannes College of Music; and (g) The New School for Drama, formerly known as the Actors Studio Drama School of New School University.

## STATEMENT OF FACTS

      7.     The Actors Studio is a membership organization for acting and theater professionals which is located in the Old Labor Stage at 432 West 44th Street in New York City. Founded in 1947 by Elia Kazan, Cheryl Crawford, and Robert Lewis, the Actors Studio is known for its work in refining and teaching "The Method", an acting approach originally developed by the Group Theatre in the 1930's based on the innovations of Russian Acting Great, Konstantin Stanislavski. The Actors Studio came to worldwide recognition under the leadership of Lee Strasberg, who was appointed Artistic Director in 1951. Members of the Actors Studio work together privately to practice their craft and to develop their skills in an experimental

2

environment.

8.      In or about 1995, the Actors Studio and Defendant New School University
officially partnered with each other to create the Actors Studio Drama School of New School
University (hereinafter "ASDS").

9.      According to Defendant's educational brochures, James Lipton. the former Dean
of the ASDS, collaborated with Actors Studio members, Arthur Penn. Ellen Burstyn, Lee Grant,
Norman Mailer, Paul Newman, and others, and they, together. "painstakingly forge[d]. down to
its smallest detail, the curriculum and program that the ASDS would offer."

10.     Defendant and the Actors Studio designed ASDS to be a three year intensive
program dedicated to training professional artists in the fields of playwriting. directing and
acting.

11.     Defendant New School University, in conjunction with the Actors Studio,
awarded those students who successfully completed the ASDS program with a Masters in Fine
Arts degree in Theatre.

12.     Defendant promoted the Actors Studio to the Plaintiffs and other class members
in its educational brochures as "one of the most exclusive institutions in the world." For
example, Defendant represented that the Actors Studio has a roster of lifetime members that is
unmatched by any other theatrical institution in the world. Such distinguished lifetime members
have included Edward Albee, Alec Baldwin. Anne Bancroft, Marlon Brando, Ellen Burstyn,
Robert DeNiro, James Dean, Olympia Dukakis, Faye Dunaway, Robert Duvall, Sally Field, Jane
Fonda, Gene Hackman, Dustin Hoffman. Deniis Hopper, Harvey Keitel, Nathan Lane. Norman
Mailer, Walter Mathau, Steve McQueen, Marilyn Monroe, Paul Newman, Jack Nicholson, Al

3

Pacino, Geraldine Page, Sidney Poitier, Sydney Pollack, Anthony Quinn, Eli Wallach, Robin

Williams, Tennessee Williams, and Joanne Woodward. Collectively, the Actors Studio's actors,

directors and playwrights have received more than 150 Oscar, Tony, and Emmy awards.

13.     Defendant specifically advertised and represented to the Plaintiffs and other

similarly situated class members that the ASDS program would provide them "training in ...

seminars and classes by film giants like Al Pacino, Alec Baldwin, Paul Newman, Sally Field,

Dennis Hopper, Sidney Lumet, Robert Redford, Faye Dunaway, Glenn Close. Holly Hunter,

Jessica Lange, Christopher Walken, Olympia Dukakis, Gene Wilder, Mark Rydell, Martin

Landau. Lee Grant, Shelly Winters, William Goldman, Sydney Pollack, Estelle Parsons, Stanley

Donen, Anjelica Huston, Tommy Lee Jones, Mike Nichols, Julia Roberts, Meg Ryan, Anthony

Quinn, Willem Dafoe, Billy Crystal, Harvey Keitel, Shirley MacLaine, Eli Wallach, Anne

Jackson, Lauren Bacall, Martin Short, Anthony Hopkins, Danny Glover, Whoopi Goldberg, Jack

Lemmon, Gary Sinise. Kathy Bates, Robert De Niro, Susan Sarandon, Meryl Streep, John Hurt,

Arthur Penn, and Ellen Burstyn . . . [which in Defendant's] ... opinion ... [is] essential cinematic

information that is **unavailable in any other educational program, whatever its emphasis or

title."** (Emphasis added).

14.     Defendant also promised Plaintiffs and similarly situated class members who

attended the ASDS the following services and benefits:

> (1)     That graduating students would receive a diploma which bore, as their
>
>         graduating institution. the prestigious Actors Studio Drama School.
>
> (2)     That matriculating students would be taught the "The Method" as it was
>
>         developed by Constantin Stanislavski in Russia and as it evolved in the
>
>         United States through the Actors Studio.

4

(3)     That all core faculty are life time members or associates of the Actors

Studio.  Indeed, Defendant specifically represented to Plaintiffs and other

similarly situated class members that "because the creators of the program

share a common legacy and technique, and because everyone of the

program's teachers of acting, directing, and playwriting is. by definition

and mandate, an experienced and distinguished life-member of the Actors

Studio, that the program possesses a unique coherence and continuity –

professionals producing professionals, as the students are taken

scrupulously from the fundamentals of their disciplines to a fully produced

third year repertory season."

(4)     That Plaintiffs and other similarly situated class members would receive

craft seminars, eight in each semester, sixteen in each school year, in

which the Actors Studio's most distinguished members. would be

interviewed.  Defendant represented that these craft seminars are televised

and shown across the United States and around the world as the Emmy

nominated and award winning television series, Inside the Actors Studio.

Defendant promoted these workshops as a way to introduce Plaintiffs and

the other class members to some of the most renowned actors, writers, and

directors in theater, film, and television. For example, the following

Actors Studio members have participated in the craft seminars: Stephen

Sondheim, Arthur Miller, Neil Simon, Matthew Broderick. Glenn Close,

Holly Hunter, Carol Burnett, Norman Jewison, Nathan Lane, Matt Dillon,

Steven Spielberg, Laurence Fishburne. Donald Sutherland. Ron Howard,

Sharon Stone, Sean Penn, Tim Robbins, Kim Basinger, Ellen Barkin, Jerry

Lewis, Billy Joel, Mary Tyler Moore, Tom Hanks, Michael Caine, and

Alan Alda, to name just a few. Defendant also promoted the craft

seminars to Plaintiffs and similarly situated class members by advising

them that the ASDS' students are seen regularly by the vast national and

international viewing audiences, which Defendant represented to exceed

40,000,000 homes in the United States, Canada and Latin America, and in

many European and Asian countries. Defendant also promoted the ASDS

to Plaintiffs and similarly situated class members by representing to them

that, following Dean Lipton's interview with the major celebrities, these

same celebrities then would teach Plaintiffs and other similarly situated

class members for one to two hours, and sometimes longer, in intensive

private classes, "shar[ing] their most intimate craft secrets with the

students."

(5)     That Plaintiffs and other similarly situated class members would receive a

complete videotape set of all the seminars that have been taped and edited

during the student's three years with the program. Specifically, Defendant

represented that they would provide "each student with a permanent record

of his or her career at the program and an invaluable and unique archive of

the Actors, writer's and director's craft that will continue to instruct and

inspire [Plaintiffs and other class members] throughout his or her career."

(6)     That Plaintiffs and other similarly situated class members would be able to

attend Friday workshops which Defendant promoted to Plaintiffs and other

similarly situated class members in the following way: "These workshops
are another Actors Studio MFA feature not available in any other
environment, educational or otherwise.  Many of the Studio's most
distinguished artists have committed themselves to teaching these
Workshops in rotation.  Studio President, Arthur Penn and Studio
members Ellen Burstyn, Estelle Parsons, Lee Grant .... bring their unique
interpretations of the Studio's 'process' to our students in this intensive
Workshop environment."

(7)    That Plaintiffs and other similarly situated class members would receive
"movement training" from the world-famous Alvin Ailey American Dance
Center.

(8)    That all graduates of the ASDS MFA, since 1997, would be considered
Working Finalists by the Actors Studio which would permit them to
bypass arduous preliminary auditions usually required for membership in
the Actors Studio.

15.    Even though Defendant promised to provide these and other various educational
services and benefits to the Plaintiffs and other similarly situated class members. and Plaintiffs
and other similarly situated class members have paid tuition and other related expenses for the
same, Defendant has failed to provide the promised services and benefits.

16.    In 2005, the contract between Defendant and the Actors Studio, whereby
Defendant and the Actors Studio would provide the foregoing educational benefits and services
to the Plaintiffs and other similarly situated class members, expired.

17.    In the immediate time period leading up to the expiration of the contract, as well

as in its immediate aftermath. Defendant falsely led Plaintiffs and other similarly situated class members to believe that Defendant would renegotiate the contract with the Actors Studio and continue to offer the exclusive ASDS curriculum.

18.     Instead. Defendant intended to create and did create. as a substitute to the ASDS, the New School for Drama. But the New School for Drama cannot and will not provide the program and exposure that the ASDS provided or the benefits and services that Defendant marketed, advertised and promised to the Plaintiffs and other similarly situated class members. Plaintiffs and other similarly situated class members now will not receive many of the services and benefits promised to them when they enrolled in the ASDS program.

19.     Also, during the tumultuous 2004-2005 school year, Defendant failed to provide to the Plaintiffs and other similarly situated class members many of the services and benefits that they had promised, including, but not limited to, classes, workshops, and Alvin Ailey training. As a result of the changes made to the program, several professors resigned from ASDS during and subsequent to the school year.

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this lawsuit as a class action against Defendant pursuant to Fed.R.Civ.P. 23(b)(3) on their own behalf and on behalf of a class consisting of all currently matriculating students of the New School for Drama, former students enrolled during the 2004-2005 school year, and the 2004-2005 graduates of the ASDS.

21.     Members of the class are so numerous and geographically diverse that joinder of all members is impracticable. Fed.R.Civ.P. 23(a)(1). Upon information and belief, there are hundreds of members of the class whose identities can be ascertained from the records and files of Defendant.

22.     Common questions of law or fact predominate over any questions affecting only individual members of the class.  Common questions include, but are not limited to, the following:

        a.     Whether Defendant breached its contract to provide certain educational benefits and services to the Plaintiffs and other similarly situated class members.

        b.     Whether Defendant intentionally and/or negligently misrepresented that it would provide certain educational benefits and services to the Plaintiffs and other similarly situated class members, which it failed to provide.

        c.     Whether Defendant was unjustly enriched by promising to provide, but failing to deliver, certain educational benefits and services to the Plaintiffs and other similarly situated class members.

        d.     Whether Defendant's use of advertising and other representations it made constituted deceptive, untrue, or misleading advertising.

        e.     Whether Defendant violated New York's Consumer Protection Law, G.B.L. §§ 349 and 350, *et seq.*, through its course of deceptive conduct.

        f.     Whether Defendant failed to disclose material facts regarding the nature of the relationship between New School University and the Actors Studio.

        g.     Whether Plaintiffs and the other members of the class have been damaged and, if so, the extent of such damages.

        h.     Whether Plaintiffs and the other class members are entitled to punitive damages, exemplary damages, restitution. disgorgement of profits, and injunctive relief.

9

23.     These common questions of law and fact predominate over questions. if any, that affect only individual members of the class.  Fed.R.Civ.P. 23(b)(3).

24.     Plaintiffs' claims are typical of and not antagonistic to the claims of the other class members because Plaintiffs. by advancing their claims, will also advance the claims of all members of the class and because Defendant engaged in conduct that caused members of the class to suffer similar injuries.  Fed.R.Civ.P. 23(a)(3).

25.     Plaintiffs and their counsel will fairly and adequately assert and protect the interests of the absent class members.  There are no material conflicts between Plaintiffs' claims and those of the absent class members that would make class certification inappropriate.  Counsel for the Plaintiffs are experienced class action attorneys and will vigorously assert Plaintiffs' claims and the claims of the absent class members.  Fed.R.Civ.P. 23(a)(4).

26.     A class action is superior to other methods for the fair and efficient resolution of this controversy.  The class action device presents fewer management difficulties and provides the benefit of a single adjudication, economy of scale, and comprehensive supervision by a single court.  Fed.R.Civ.P. 23(b)(3).

27.     Also, the prosecution of separate actions by individual members of the class would create a risk of:

        a.     Inconsistent or varying adjudications with respect to individual members of the class; and

        b.     Adjudication with respect to individual members of the class which would, as a practical matter. be dispositive of the interests of other members not parties to the adjudication or substantially impair or impede their ability to

protect their interest.

28.     Individual litigation of all claims which might be asserted by all class members would produce such a multiplicity of cases that the judicial system would remain unduly congested.  Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of Defendant.

29.     The certification of a class would allow litigation of claims that otherwise, in view of the expense of the litigation, may result in an insufficient amount to support separate, individual actions.

30.     Defendant has acted and/or refused to act in ways generally applicable to the class, thereby making final equitable relief appropriate with respect to the class.

## COUNT I

## **BREACH OF CONTRACT**

31.     Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

32.     Plaintiffs and other similarly situated class members entered into a contract with Defendant New School University.

33.     Under the terms of the contract, Plaintiffs and other similarly situated class members agreed to pay Defendant tuition and other educationally related expenses and Defendant New School University promised to provide them a graduate drama school operated under the auspices of the Actors Studio with attributes and benefits as described in the educational brochures and other materials disseminated by Defendant.

34.     Plaintiffs and other similarly situated class members paid Defendant over thirty thousand dollars per year to attend the ASDS.  In consideration for Plaintiffs and other similarly

12

situated class members' tuition payments and other related expenses, Defendant promised to provide those services and benefits described in Paragraph 14 above, as well as an assortment of other educational services and benefits.

35.     Defendant failed to provide such services and benefits as promised and for which Plaintiffs and other similarly situated class members contracted.

36.     As a result. Defendant breached their contract with the Plaintiffs and other similarly situated class members, and Plaintiffs and other similarly situated class members suffered legal damages.

37.     Defendant also entered into a contract with the Actors Studio regarding the creation of the ASDS.  Plaintiffs and other similarly situated class members were intended third party beneficiaries of this contract.

38.     Defendant breached its contract with the Actors Studio, and in so doing, failed to provide the educational services and benefits for which Plaintiffs and other similarly situated class members were intended third party beneficiaries.

39.     As a result, Plaintiffs and other similarly situated class members were deprived of the educational services and benefits which were promised to them and for which they had a reasonable expectation to receive.

40.     As a result of Defendant's contractual breaches, Plaintiffs and other similarly situated class members have suffered damages including, but not limited to, the cost of tuition and related educational expenses.

## COUNT II

## VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 349, *ET SEQ.*

41.　　Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

42.　　This Count is brought pursuant to New York's Unfair Trade Practices and Consumer Protection Law.

43.　　At all relevant times. Defendant's conduct in marketing, advertising and promotion of ASDS were consumer oriented practices within the meaning of G.B.L. § 349.

44.　　G.B.L. § 349 provides that it is unlawful to employ a deceptive act or practice in the conduct of any business, trade or commerce in this state.

45.　　Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices. deception, fraud, false pretenses, misrepresentations and/or knowing concealment, suppression, or omission of material fact.  Defendant intended that others rely on such concealment, suppression, or omission in the connection with the advertising, marketing and promotion of Defendant New School University.

46.　　Defendant's practices violated G.B.L. § 349 in one or more of the following ways.

    a.　　Defendant misrepresented to Plaintiffs and other similarly situated class members that it intended to renew their contract with the Actors Studio.

    b.　　Defendant knowingly suppressed and concealed from Plaintiffs and other similarly situated class members its intent not to renew its contract with the Actors Studio.

    c.　　Defendant misrepresented to Plaintiffs and other similarly situated class

13

members that it would negotiate in good faith with the Actors Studio to renew their contract.

d.     Defendant knowingly suppressed and concealed from Plaintiffs and other similarly situated class members its intent not to negotiate in good faith with the Actors Studio.

e.     Defendant provided, disseminated, advertised, marketed, and promoted to Plaintiffs and similarly situated class members false information regarding the nature of its drama school.  Specifically, Defendant falsely communicated to Plaintiffs and other similarly situated class members that its drama school would have certain attributes and would offer certain services, which in fact, it neither now has nor will it offer.  These attributes and services are listed in Paragraph 14 above.

47.     Defendant's misrepresentations and omissions of fact constitute violations of G.B.L. § 349.

48.     Defendant's conduct, as alleged herein, was likely to mislead a reasonable consumer, such as Plaintiffs and other similarly situated class members, acting reasonably under the circumstances into falsely believing  that Defendant (a) intended to renew its contract with the Actors Studio in order to continue operating the New School University's graduate drama program under the auspices of the Actors Studio; and (b) would provide for students the benefits set forth in Paragraph 14 above.

49.     Defendant engaged in the deceptive acts and practices in order to sell to Plaintiffs and other similarly situated class members its products and services.

50.     Defendant's misconduct was willful, intentional, or reckless.

14

51.    Defendant's unlawful conduct arose, was directed and emanated from New York to the great detriment and injury of the Plaintiffs and similarly situated class members.

52.    As a direct and proximate result of Defendant's actions, plaintiff and the class suffered injuries.

**COUNT III**

**VIOLATIONS OF THE NEW YORK GENERAL BUSINESS LAW § 350, *ET SEQ.***

53.    Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

54.    Defendant's misconduct, as set forth above, constitutes false advertising under G.B.L. § 350, *et seq.*

55.    Defendant's advertising was misleading in several material respects, including, but not limited to, the fact that Defendant provided, disseminated. marketed and otherwise distributed advertising and other information to Plaintiffs and similarly situated class members that Defendant intended to renew its contract with the Actors Studio in order to continue operating the New School University's drama school under the auspices of the Actors Studio and to provide Plaintiffs and the other class members the benefits set forth in Paragraph 14 above.

56.    Plaintiffs and other similarly situated class members are consumers and Defendant's misconduct affected public interest.

**COUNT IV**

**UNJUST ENRICHMENT**

57.    Plaintiffs reallege the allegations contained in the paragraphs above as though fully set forth herein.

58.    Benefits were conferred upon Defendant by the Plaintiffs and other similarly

15

situated class members in the form of tuition and other educationally related payments of school expenses.

59.     Defendant appreciated those benefits.

60.     Retention of those benefits would be inequitable based upon, *inter alia*, Defendant's misconduct in misrepresenting material facts to the Plaintiffs and members of the class and in concealing or otherwise withholding material information from the Plaintiffs and other similarly situated class members regarding Defendant's intention to continue operating the New School University's drama school under the auspices of the Actors Studio.

61.     Accordingly, Defendant will remain unjustly enriched unless it is ordered to disgorge those wrongfully retained profits.

### PRAYER FOR RELIEF

62.     Plaintiffs respectfully request that (a) this matter be certified as a class action using the definition of "class" as set forth above in Paragraph 20, that Plaintiffs be appointed class representatives, and that Plaintiffs' attorneys be appointed class counsel; (b) that judgement be entered against Defendant in an amount to be proven at trial for violations of New York statutory and common law, including actual damages, expected damages, exemplary damages, treble damages, costs of suit, and attorneys fees; (c) that judgement be entered against the Defendant for appropriate equitable relief, including restoration of the graduate drama program as described in Defendant's representations and disgorgement of unjustly obtained profits, costs of suit, and attorneys fees; and (d) for such other damages, equitable relief, or other relief that the court may deem appropriate, including pre and post-judgement interest.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury as to all issues.


Dated:        New York, New York
              August 12, 2005

                                        GISKAN & SOLOTAROFF

                              By:       _____
                                        Oren Giskan (OG 3667)
                                        Jason L. Solotaroff (JS 5739)
                                        207 West 25th Street
                                        New York, NY 10001
                                        (212) 847-8315


                                        LAW OFFICES OF DAVID J. BERNEY
                                        David J. Berney*
                                        1715 Spruce Street, 3F
                                        Philadelphia, PA 19103
                                        (215) 545-5898

                                        Attorneys for Plaintiffs


* Admission *Pro Hac Vice* will be sought.